Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000023
29-JUN-2018
03:53 PM

NOS. CAAP-15-0000023 AND CAAP-15-0000027

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-15-0000023**

CLARK REALTY CORPORATION and HENRY G. AKONA, JR., as General
Partner of the Henry F. Akona Partnership, Plaintiffs-Appellants,
v.
HENRY F. AKONA TRUST; FRANCIS H. PANG; DIANA MAY PANG DEABLER;
HENRIETTA M.L. PANG; LELAND M.S. PANG; JERALD M.S. PANG;
and DOES 1-10, Defendants-Appellees,
and
FRANCIS H. PANG; DIANA MAY PANG-DEABLER; HENRIETTA M.L. PANG,;
LELAND M.S. PANG; JERALD M.S. PANG, Counterclaimants-Appellees,
v.
CLARK REALTY CORPORATION and HENRY G. AKONA, JR.,
Counterclaim Defendants-Appellants,
and
SEFTON R. CLARK, Personal Representative of
the Estate of PUTMAN DAMON CLARK, Deceased,
Additional Counterclaim Defendant-Appellant,
and
ROBERT TRIANTOS, SUCCESSOR TRUSTEE OF THE WARD K. KUWADA TRUST,
and DOE DEFENDANTS 1-5, Additional Counterclaim
Defendants-Appellees

**CAAP-15-0000027**

CLARK REALTY CORPORATION and HENRY G. AKONA, JR., as General
Partner of the Henry F. Akona Partnership, Plaintiffs-Appellees,
v.
HENRY F. AKONA TRUST; FRANCIS H. PANG;
and DOES 1-10, Defendants-Appellants,
and
FRANCIS H. PANG; DIANA MAY PANG-DEABLER; HENRIETTA M.L. PANG,;
LELAND M.S. PANG; JERALD M.S. PANG, Counterclaimants-Appellees,
v.
CLARK REALTY CORPORATION and HENRY G. AKONA, JR.,
Counterclaim Defendants-Appellees,
and
SEFTON R. CLARK, Personal Representative of
the Estate of PUTMAN DAMON CLARK, Deceased,
Additional Counterclaim Defendant-Appellee,
and

ROBERT TRIANTOS, SUCCESSOR TRUSTEE OF THE WARD K. KUWADA TRUST, and DOE DEFENDANTS 1-5, Additional Counterclaim Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 09-01-486K)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Reifurth, JJ.)

This is a consolidated appeal stemming from a Master Lease dated August 16, 1972, as amended (the **Master Lease**), for a commercial and retail property in Kailua-Kona known as Emma's Market Place (the **property**). We address herein an appeal and cross-appeal from the Third Amended Final Judgment (**Third Amended Judgment**) filed on December 16, 2014, in the Circuit Court of the Third Circuit (**circuit court**), challenging various orders of the circuit court.[1]

In CAAP-15-0000023, Plaintiffs/Counterclaim Defendants/Appellants Clark Realty Corporation (**Clark Realty**), Henry G. Akona, Jr. (**Henry G. Akona**), and Counterclaim Defendant/Appellant Putman Damon Clark (**Putman Clark**)[2] contest the following entered in the circuit court:

(A) "Order Denying Plaintiff/Counterclaim Defendants [Clark Realty], [Henry G. Akona] and Additional Counterclaim Defendant [Putman Clark]'s Motion for Directed Verdict and/or for Judgment as a Matter of Law" (**Order Denying Directed Verdict/JMOL**) entered on July 11, 2012;

(B) "Order Denying Plaintiffs/Counterclaim Defendants [Clark Realty], [Henry G. Akona], and Additional Counterclaim Defendant [Putman Clark]'s Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Filed July 11, 2012" (**Order Denying Reconsideration**) entered on November 15, 2012;

---

[1] The Honorable Ronald Ibarra presided.

[2] Putman Clark died on June 27, 2016. Pursuant to this court's order dated November 28, 2016, Sefton R. Clark, Personal Representative of the Estate of Putman Damon Clark, was substituted into the case for Putman Clark.

(C) "Order Granting in Part and Denying in Part Defendants Henry F. Akona Trust's Motion for Amendment of the (1) Amended Findings of Fact, Conclusions of Law and Order and (2) Amended Judgment, both Entered on November 15, 2012" (**Order Re Amendment of FOF/COL/Order**) entered on January 24, 2013; and

(D) "Second Amended Findings of Fact, Conclusions of Law and Order" (**Second Amended FOF/COL/Order**) entered on January 24, 2013.

In their appellate briefs,[3] Clark Realty and Putman Clark contend that the circuit court erred by: (1) concluding that Putman Clark, individually, was an indispensable party because Hawai'i Rules of Civil Procedure (**HRCP**) Rule 19 did not permit his addition as a counterclaim defendant after trial; (2) applying the tort of breach of the implied covenant of good faith and fair dealing to a commercial lease; (3) awarding attorneys' fees and costs to Defendant-Appellee Henry F. Akona Trust (the **Akona Trust**); and (4) incorrectly determining the calculation of net annual rent.

In the cross-appeal, CAAP-15-0000027, the Akona Trust and Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff/Appellant Francis H. Pang, individually and in his capacity as Successor Trustee of the Akona Trust (**Francis Pang, Individually and as Trustee**) contend that in the Second Amended FOF/COL/Order, the circuit court erred as to the amount of rent owed by Clark Realty and Putman Clark to the Akona Trust, because the circuit court's interpretation of the Master Lease's definition of "gross receipts" was incorrect. They specifically challenge conclusions of law (**COL**) 28, 30, 35, and 50 in the Second Amended FOF/COL/Order.

For the reasons discussed below, we affirm in part and vacate in part.

---

[3] Although Henry G. Akona was party to the Notice of Appeal in CAAP-15-0000023, he is not named as a party to the opening brief or reply brief in that appeal.

3

## I. CAAP-15-0000023

### A. HRCP Rule 19

Clark Realty and Putman Clark contend that the circuit court erred in concluding that Putman Clark was an indispensable party under HRCP Rule 19 after a bench trial was held and holding Putman Clark liable as a counterclaim defendant for claims never asserted against him by the Akona Trust. Clark Realty and Putman Clark contest the circuit court's COLs 43 and 44:

> 43. At the same time, Putman Clark will remain as a Counterclaim Defendant in this matter. The Court concludes that Putman Clark, as current lessee, is an indispensible party in this action. See HRCP 19(a). While Putman Clark was not named in The Akona Trust's Counterclaim, no prejudice will occur by including Clark as a remaining party. Clark has been represented by counsel throughout this lawsuit; indeed, by the same counsel who represents Clark Realty and [Henry G. Akona]. Putman Clark has joined Plaintiffs in their pleadings.
> 44. Thus, the Court concludes that Putman Clark's assignments and mortgages regarding the Property and Master Lease are valid. At the same time, Putman Clark is jointly and severally liable for back payments to the Akona Trust, including the increase in the base rent effective as of September 1, 2006 and the Hawaii GET on those amounts.

We review the circuit court's decision regarding indispensable parties under HRCP Rule 19 for an abuse of discretion. Marvin v. Pflueger, 127 Hawai'i 490, 495, 280 P.3d 88, 93 (2012) (citation omitted).

Clark Realty and Putman Clark argue that allowing the Akona Trust to join Putman Clark post-trial as an indispensable party under HRCP Rule 19, for purposes of a claim by the Akona Trust, was prejudicial and a violation of his due process rights. Clark Realty and Putman Clark do not contest that Francis Pang, individually, asserted claims against Putman Clark that were addressed as part of the bench trial, but argue that Francis Pang, individually, did not have standing to bring those claims against Putman Clark and that the Akona Trust did not plead any claims against Putman Clark. The record demonstrates that, since June 2011, Putman Clark was named as a counterclaim defendant by parties other than the Akona Trust, and the claims asserted against Putman Clark included a claim for breach of the implied

4

covenant of good faith and fair dealing which was similar, if not identical, to the claim under which the circuit court ultimately determined that Putman Clark was liable to the Akona Trust as an indispensable party.

On November 12, 2009, Clark Realty and Henry G. Akona initiated this suit by filing a Complaint against Francis Pang, individually, Diana May Pang Deabler, Henrietta M.L. Pang, Leland M.S. Pang and Gerald M.S. Pang (collectively, **the Pangs**), and the Akona Trust, asserting that the Master Lease had been properly assigned to Clark Realty and seeking, inter alia, to enjoin the Pangs and the Akona Trust from interfering with Clark Realty's rights under the lease.[4]

On January 7, 2010, the Pangs filed their answer and also asserted counterclaims against Clark Realty and Henry G. Akona. On September 10, 2010, the Akona Trust, by and through its trustee Francis Pang, filed a counterclaim against Clark Realty and Henry G. Akona, but not Putman Clark, alleging, inter alia, Count I: Breach of the Implied Covenant of Good Faith and Fair Dealing.

On April 19, 2011, the Pangs filed a motion seeking leave to file a First Amended Counterclaim that, inter alia, would join Putman Clark as a necessary party under HRCP Rule 19(a) because Putman Clark was the current lessee under the Master Lease. The circuit court granted the motion and on June 1, 2011, the Pangs filed a First Amended Counterclaim against Clark Realty, Henry G. Akona, and additional counterclaim defendant Putman Clark, asserting, inter alia, Breach of Contract (Count I) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III).

On July 26, 2011, all of the Pangs, except for Francis Pang, individually, were dismissed from the lawsuit by

---

[4] Plaintiffs Clark Realty and Henry G. Akona assert that Henry G. Akona, as managing partner for the Henry F. Akona Partnership (a partnership among Henry G. Akona, the Pangs, and others), consented to assignments of the Master Lease, including the assignment to Clark Realty.

stipulation. Thus, going forward, only Francis Pang, individually, had asserted claims against Putman Clark. Although Clark Realty and Putman Clark's initial counsel withdrew and different counsel filed their appearance, the circuit court correctly found that the same counsel represented Clark Realty, Henry G. Akona, and Putman Clark throughout the litigation.

Following a bench trial in February 2012, the circuit court dismissed Francis Pang's counterclaims brought in his individual capacity, concluding that Francis Pang, individually, lacked standing to bring the counterclaims. As noted, however, the circuit court determined that Putman Clark "will remain as a Counterclaim Defendant in this matter" because "as current lesseee, [he] is an indispensible [sic] party in this action. See HRCP 19(a)."

Importantly, the record demonstrates that Putman Clark participated in all relevant aspects of the litigation to protect his asserted interest in the litigation. Under the doctrine of judicial estoppel,

> a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him [or her], at least where he [or she] had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his [or her] action.

Torres v. Torres, 100 Hawai'i 397, 408, 60 P.3d 798, 809 (2002) (citations omitted).

In Torres, the Hawai'i Supreme Court held that the appellant was bound by the family court's judgment although she was not formally a party to the action. Id. Appellant appeared at a hearing, filed a motion for reconsideration of the family court's order and "fully participated in all of the relevant family court proceedings." Id. Thus, the supreme court determined that appellant was estopped from claiming she was not a proper party given that she "participated in all practical respects as a 'party' to protect her asserted interests throughout this litigation[,]" and it was "inconsistent for her to now claim that she is not such a 'party,' and, allowing her to

6

do so would prejudice [appellee], who has relied upon [appellant's] participation in the proceedings." Id.

In this case, Putman Clark fully participated in the relevant proceedings and is estopped from claiming that he is not a proper party. The Pangs named Putman Clark a counterclaim defendant on June 1, 2011. On September 30, 2011, Putman Clark, along with Clark Realty and Henry G. Akona, filed his answer to the Pangs' First Amended Counterclaim. Further, along with Clark Realty and Henry G. Akona, Putman Clark filed a partial summary judgment motion on December 12, 2011, and a motion for directed verdict and/or judgment as a matter of law on February 8, 2012. Putman Clark also filed, in conjunction with Clark Realty and Henry G. Akona, a Closing Statement related to the bench trial on February 22, 2012, as well as a motion for reconsideration, filed on July 20, 2012, seeking reconsideration of the circuit court's July 11, 2012 Findings of Fact, Conclusions of Law and Order. In short, we conclude that Putman Clark was able to and did participate in all of the relevant circuit court proceedings.

The circuit court ruled in relevant part that Putman Clark's assignments and mortgages regarding the property and the Master Lease were valid, but that he was "jointly and severally liable for back payments to the Akona Trust[.]" The circuit court held Putman Clark liable for breach of the covenant of good faith and fair dealing for failing to make full payment owed under the Master Lease, which was similar to a claim that the Pangs alleged in the First Amended Counterclaim against Putman Clark, and which the Akona Trust asserted against Clark Realty and Henry G. Akona (but not against Putman Clark). When comparing the allegations in the Pangs' First Amended Counterclaim against Putman Clark, including the breach of the covenant of good faith and fair dealing claim, and the allegations in the Akona Trust's counterclaim against Clark Realty, the allegations are very similar. As such, the Akona Trust asserted essentially the same allegations in regard to its counterclaim against Clark Realty as was asserted by the Pangs

7

against Putman Clark, and Putman Clark had the opportunity and defended against the allegations underlying the claim for which he was ultimately held liable to the Akona Trust.

Given the above, Putman Clark is estopped from claiming that he was not an indispensable party to this case for purposes of liability for back payments under the Master Lease. The circuit court did not abuse its discretion in holding Putman Clark liable, as set forth in COLs 43 and 44.

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Clark Realty and Putman Clark contend that a claim for breach of the implied covenant of good faith and fair dealing is a tort claim that cannot be applied to commercial leases and contracts. Clark Realty and Putman Clark rely on Best Place, Inc. v. Penn Am. Ins. Co., in which the Hawai'i Supreme Court recognized a tort recovery for breach of the implied covenant of good faith and fair dealing in the insurance context. 82 Hawai'i 120, 130-31, 920 P.2d 334, 344-45 (1996).

However, the supreme court did not preclude the recognition of a contractual claim for implied covenants of good faith and fair dealing related to commercial leases and contracts. Id. at 124-25, 920 P.2d at 338-39. It is well established that every contract contains an implied covenant of good faith and fair dealing. Kutkowski v. Princeville Prince Golf Course, LLC, 129 Hawai'i 350, 359, 300 P.3d 1009, 1018 (2013).

Moreover, in a commercial lease dispute case, this court recognized a viable claim for contractual breach of good faith and fair dealing. Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 107 Hawai'i 423, 436-37, 114 P.3d 929, 942-43 (2005). In McElroy, we concluded that in light of the evidence presented at the summary judgment stage, there were genuine issues of material fact as to whether the defendant "was faithful to an agreed common purpose and acted consistently with the justified expectations of Plaintiffs[.]" Id. at 437, 114 P.3d at 943

(citing <u>Hawaii Leasing v. Klein</u>, 5 Haw. App. 450, 698 P.2d 309 (1985)). In <u>Hawai'i Leasing</u>, this court recognized that parties to a contract have a duty of good faith and fair dealing for an alleged breach of contract of guaranty. 5 Haw. App. at 456, 698 P.2d at 313.

In the instant case, the claim for breach of the implied covenant of good faith and fair dealing was contractual in nature. With respect to its claim for breach of the implied covenant of good faith and fair dealing, the Akona Trust alleged that:

> 55. Any <u>contracts between Counterclaim Defendants and Counterclaimant impose upon each party a duty of good faith and fair dealing in their performance and enforcement</u>.
>
> 56. Counterclaim Defendant repeatedly and <u>materially breached their duties of good faith and fair dealing</u> to Counterclaimant.
>
> 57. As a proximate result of said breaches, Counterclaimant has been damaged in an amount to be determined at trial.

(Emphasis added.)

The circuit court recognized this contractual breach of the implied covenant of good faith and fair dealing in its COLs 46 and 47, applied it to the facts at hand, and determined the following:

> 46. <u>Count I</u> of Akona Trust's Counterclaim is a <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>. Plaintiffs Clark Realty, Henry G. Akona, Jr. and Counterclaim Defendant Putman Clark argue that the Trust has made no claim for damages for Breach of Contract against either Clark Realty Corporation or Henry G. Akona, Jr. On the contrary, the Akona Trust has argued that Clark Realty, Putman Clark and the Kuwada Trust have materially breached the terms of the Master Lease by under-paying (a) percentage rent from and after January 1, 2004, (b) fixed minimum lease rent for the period from and after September 1, 2006 to date and (c) Hawaii general excise taxes on those amounts, which were due and payable under the Master Lease, as amended.
>
> 47. <u>The Court has found that Clark Realty and Putman Clark have not made full payment under the terms of the Lease. It thus allows this claim to stand against Clark Realty and Putman Clark</u>.

(Footnote omitted and emphasis added.)

Although it appears the Akona Trust did not assert a claim for breach of contract against Clark Realty or Putman Clark, the circuit court held Clark Realty and Putman Clark

liable under Count I (breach of the implied covenant of good faith and fair dealing) of the Akona Trust's counterclaims. As a result, the circuit court determined that Clark Realty and Putman Clark owed a total of $174,471.28 minus Clark Realty's partial payment of $22,487.54. In our view, the circuit court imposed liability based on a contractual breach of the implied covenant of good faith and fair dealing.

Clark Realty and Putman Clark asserted that they had properly assigned rights under the Master Lease, which was disputed by, among others, the Akona Trust. This may explain why the Akona Trust did not assert a counterclaim for breach of contract, but instead chose to assert that "[a]ny contracts between Counterclaim Defendants and Counterclaimant impose upon each party a duty of good faith and fair dealing in their performance and enforcement." Once the circuit court ruled that it would uphold the assignments of the Master Lease to Clark Realty and Putman Clark, it properly considered what was owed by those parties under the Master Lease. As this court has noted, "[g]ood faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Hawaii Leasing, 5 Haw. App. at 456, 698 P.2d at 313 (internal quotation marks and citation omitted).

Based on the record and claims in this case, and the circuit court's determination that Clark Realty and Putman Clark underpaid based on the Master Lease, the circuit court did not err in holding Clark Realty and Putman Clark liable for breach of the implied covenant of good faith and fair dealing imposed under the Master Lease.

## C. Attorneys' Fees and Costs

Clark Realty and Putman Clark contend that the circuit court abused its discretion in awarding attorneys' fees in the amount of $43,617.82 and costs in the amount of $6,724.42 to the Akona Trust.

The supreme court has said that under Hawaii Revised Statutes (**HRS**) § 607-14 (2016), "assumpsit" is "a common law form of action which allows for the recovery of damages for

non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (citations and internal quotations marks omitted).

> Further,
>
> in ascertaining the nature of the proceeding on appeal, this court has looked to the essential character of the underlying action in the trial court. The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought.

Id. (citations and internal quotation marks omitted). Moreover, "[b]ecause leases are essentially contractual in nature, attorneys' fees in lease disputes are awardable under the 'assumpsit' prong and may be awarded under the 'contract' prong of HRS § 607-14." Forbes v. Hawaii Culinary Corp., 85 Hawai'i 501, 507, 946 P.2d 609, 615 (App. 1997).

The Akona Trust alleged a contract-based bad faith claim under the Master Lease, and the damages sought were amounts owed under the Master Lease if it had been properly assigned, i.e., if there in fact was a contract between the parties. The Akona Trust sought unpaid rent "including the underpayment of percentage rent, the increase in the base rent effective as of September 1, 2006 and the Hawaii GET on those amounts." Thus, the essential character of the underlying action, the nature of the grievances, and relief sought demonstrate that the claim upon which the Akona Trust prevailed was "in the nature of the assumpsit."

Clark Realty and Putman Clark also argue that the circuit court erred in allowing attorneys' fees in excess of the statutory limit of 25% under HRS § 607-14. The circuit court awarded 25% of $174,471.28 which is the amount the circuit court determined that Clark Realty and Putman Clark owed. During the pendency of the litigation, Clark Realty remitted $22,487.54 to the Akona Trust, reducing the amount to $151,983.74. Clark Realty and Putman Clark argue that the limit of 25% should be based on the reduced amount of $151,983.74.

11

In Forbes, a rent dispute case, the supreme court held that the amount upon which attorneys' fees should have been calculated under HRS § 607-14 should have included the rental payments made during the litigation. Id. at 503, 511, 946 P.2d at 611, 619. Thus, the circuit court did not err in awarding attorneys' fees calculated at 25% of $174,471.28.

## D. Net Annual Rent

Clark Realty and Putman Clark argue that the circuit court erred because it included percentage rent in setting the fixed minimum rent for the period starting on September 1, 2006, and thus the circuit court improperly doubled the percentage rent. Clark Realty and Putman Clark contest COLs 35 and 50:

> 35. The parties agree on the amounts paid by Clark Realty and [Putman] but disagree on back amounts owed. The Court relies on the figures set forth in the Plaintiff's expert report. However, the Court finds an error in the calculations from 2006 forward, where Plaintiff failed to combine the fixed minimum rent with the percentage rent. A recalculation of the amount due and owing, in back payments including Hawaii general excise tax is as follows: 2003: 486.23; 2004: 2954.16; 2005: 3058.01; 2006: 13,050.90; 2007: 33,311.68; 2008: 32,932.06; 2009: 33,034.40; 2010: 28861.70; 2011: 26,782.14, for a total of $174,471.28.
>
> . . . .
>
> 50. Clark Realty remitted a partial payment of $22,487.54. The total amount due and owing through November 2011 is $151,968.74.

They also contest the circuit court's ruling that "from September 1, 2006 until August 31, 2016, the monthly fixed minimum rent shall be $5,925.41[.]"

The argument by Clark Realty and Putman Clark is focused on whether the circuit court properly construed the Master Lease, and thus the issue is one of contract interpretation.

> When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court.
>
> This court has determined that it is fundamental that terms of contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning. Further, in construing a contract, a court's principal objective is to

12

ascertain and effectuate the intention of the parties as manifested by the contract in its entirety. If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen.

Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 213, 166 P.3d 961, 973 (2007) (internal quotation marks, citations, and brackets omitted).

The Master Lease is for a term of fifty-five (55) years, starting on September 1, 1972. Under the Master Lease, the monthly rent consists of two components, fixed minimum rent and percentage rent. In the "Fixed Minimum Rental" section of the Master Lease, subsection (e) sets out the applicable fixed minimum rent for the period at issue, starting on September 1, 2006.[5] The Fixed Minimum Rental section states in whole:

> Fixed Minimum Rental:
>     (a) During the first year up to and including August 31, 1973, the sum of ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500.00) per month;
>     (b) During the next thirteen (13) years hereof, the sum of TWO THOUSAND DOLLARS ($2,000.00) per month, up to and including August 31, 1986;
>     (c) During the next ten (10) years the sum of THREE THOUSAND DOLLARS ($3,000.00) per month, up to and including August 31, 1996;
>     (d) During the next ten (10) years the sum of THREE THOUSAND FIVE HUNDRED DOLLARS ($3,500.00) per month, up to and including August 31, 2006;
>     (e) The remainder of the term shall be divided into two periods of ten years and eleven years respectively. The net annual rental for each of said periods (payable, however, in equal monthly installments) shall be determined by written agreement of Lessor and Lessee or, if they fail to reach such agreement at least ninety (90) days before the commencement of such period, then the respective net annual rental shall be the product of the then prevailing rate on land of similar type and location, which rate shall in no event be less than eight per cent (8%) per annum times the then market value of the demised land exclusive of buildings, and shall be determined by appraisal as provided hereinbelow. In no event shall the net annual rental for each of said periods be less than the highest net annual rental including percentage rentals of the preceding period.

(Emphasis added.)

In turn, the section for "Percentage Rental" provides as follows:

---

[5] The applicable version of the "Fixed Minimum Rental" section is contained in an "Amendment to Lease" recorded on December 10, 1973.

Percentage Rental:
    Commencing with the second year of the term and thereafter in each month, the Lessee shall, on or before the 15th day, pay to the Lessor in addition to the monthly fixed rent ten per cent (10%) of the gross receipts of the Lessee derived from business conducted upon or from the premises during the prior month in excess of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00). Lessee shall, concurrently with the payment of the percentage rental, submit to Lessor a statement of Lessee's income for the prior month.

(Emphasis added.)

"Net annual rental" is not defined in the Master Lease. However, contract terms should be interpreted "according to their plain, ordinary, and accepted sense in common speech." Koga Eng'g & Constr., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010) (citations omitted). In the "Fixed Minimum Rental" section, subsection (e) uses the phrase "net annual rental" several times. However, it is the last sentence of subsection (e) that is of particular importance here.

Clark Realty and Putman Clark contend that the circuit court erred because its calculation of a fixed minimum rent of $5,925.41 per month -- from September 1, 2006 to August 31, 2016 -- includes percentage rent, which improperly results in a double percentage rent of 20%. We conclude that the circuit court correctly interpreted the Master Lease. In particular, the circuit court properly applied the last sentence of subsection (e) under "Fixed Minimum Rental," which provides that: "[i]n no event shall the net annual rental for each of said periods be less than the highest net annual rental including percentage rentals of the preceding period." (Emphasis added).

In calculating the fixed minimum rent of $5,925.41 per month, the circuit court relied on opinions rendered by Darlene Jo Ferrantino (**Darlene Ferrantino**), Clark Realty and Putman Clark's expert witness. Ferrantino opined that during the preceding period (i.e., the period from 1996 to 2006), the highest net annual rental was $71,104.89 ($5,925.41 per month), which apparently included percentage rental paid during that year. Given the terms of the Master Lease and the evidence in the record, the circuit court did not err in calculating the

14

"fixed minimum rental" for the period between September 1, 2006 and August 31, 2016.

As set forth in the "Percentage Rental" section of the Master Lease, the Lessor was entitled to the specified percentage rental "in addition to the monthly fixed rent[.]" Thus, based on a plain reading of the Master Lease, we conclude that Clark Realty and Putman Clark's challenge to the circuit court's calculation of net annual rent lacks merit.

## II. CAAP-15-0000027 (Cross-Appeal)

In their cross-appeal, the Akona Trust and Francis Pang, Individually and as Trustee, contend that the circuit court erred in determining the amount owed by Clark Realty and Putman Clark by misconstruing the definition of "gross receipts" under the Master Lease, and they challenge the circuit court's COLs 28, 30, 35, and 50:

> 28. The Court concludes that the terms of the Contract are not ambiguous, and that CAM, nor the other "payments from tenants"[6] specified in Defendant's expert report are not to be included in the amount of "gross receipts."
>
> . . . .
>
> 30. The annual rentals as determined by Baird Appraisals and John Child & Company were less than the highest annual rental including percentage rentals of the preceding period and accordingly, the fixed minimum rental for the period from September 1, 2006 to August 31, 2016 should be, as stated by Plaintiff's expert, $5,925.41 per month.
>
> . . . .
>
> 35. The parties agree on the amounts paid by Clark Realty and Putman Clark but disagree on back amounts owed. The Court relies on the figures set forth in the Plaintiff's expert report. However, the Court finds an error in the calculations from 2006 forward, where Plaintiff failed to combine the fixed minimum rent with the percentage rent. A recalculation of the amount due and owing, in back payments including Hawaii general excise tax is as follows: 2003: 486.23; 2004: 2954.16; 2005: 3058.01; 2006: 13,050.90; 2007: 33,311.68; 2008: 32,932.06; 2009: 33,034.40; 2010: 28861.70; 2011: 26,782.14, for a total of $174,471.28.
>
> . . . .

---

6 It appears that the other "payments from tenants" referenced by the circuit court as being set forth in the Defendants' expert report (**Report by Lee W. Erwin, CPA**) consists of base rent, lease rent, late fees, interest charges, common area maintenance (**CAM**), PY CAM, general excise taxes, electricity reimbursements, and refuse reimbursements.

50.  Clark Realty remitted a partial payment of $22,487.54.
The total amount due and owing through November 2011 is
$151,983.74[.]

As discussed previously, the last sentence of subsection (e) for "Fixed Minimum Rental" provides the method for determining the fixed minimum rent starting on September 1, 2006. In that sentence, the calculation of net annual rental for the applicable period is not to "be less than the highest net annual rental including percentage rentals of the preceding period." In turn, as set out in the section for "Percentage Rental," a determination of percentage rent includes "gross receipts" as part of the calculation. Thus, a determination of the items included in "gross receipts" is relevant to calculating the amount of percentage rent, which in turn affects the determination of the fixed minimum rent starting on September 1, 2006.

The Akona Trust and Francis Pang, Individually and as Trustee, also argue that the circuit court's ruling as to what should be excluded from "gross receipts" resulted in an erroneous calculation of delinquent payments owed going back to November of 2003.

Under the Master Lease, the section for "Percentage Rental" states:

Percentage Rental:
    Commencing with the second year of the term and thereafter in each month, the Lessee shall, on or before the 15th day, pay to the Lessor in addition to the monthly fixed rent ten per cent (10%) of the **gross receipts of the Lessee derived from business conducted upon or from the premises** during the prior month in excess of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00). Lessee shall, concurrently with the payment of the percentage rental, submit to Lessor a statement of Lessee's income for the prior month.

(Emphasis added.)

In turn, "Gross Receipts" are defined in the Master Lease as follows:

Gross Receipts.
    For the purpose of computing percentage rental, Lessee's gross receipts shall be the total aggregate money received by the Lessee during the calendar month from the business conducted by the Lessee in and from or on the demised premises, including, without limiting the generality

16

> thereof, all rental income from all tenants, including rental of parking spaces, and in the event Lessee owns or operates a commercial enterprise on a portion of the premises, e.g., a clothing store, then all income derived from operations, including all merchandise or services delivered or rendered at a place other than the demised premises on order taken at the demised premises. <u>Gross receipts shall be reduced by the amount of Lessee's gross income tax, by all rebates made by Lessee and shall exclude all moneys received on account of taxes, whether they be sale taxes, real property taxes or assessments or otherwise</u>.

(Emphasis added.)

In our view, based on a plain reading of the Master Lease, "gross receipts" should consist of "the total aggregate money received by the Lessee during the calendar month from the business conducted by the Lessee in and from or on the demised premises," which shall be "reduced by the amount of Lessee's gross income tax, by all rebates made by Lessee and shall exclude all moneys received on account of taxes, whether they be sale taxes, real property taxes or assessments or otherwise." In the section defining gross receipts, we read the second part of the first sentence, which starts "including, without limiting the generality thereof," as providing examples of the type of items included within gross receipts, but not a limitation on the prior language defining gross receipts.

In the context of the "payments from tenants" described in the Report by Lee W. Erwin, CPA, which appears to be referenced by the circuit court in COL 28, the only amounts that appear to fall outside of the definition of gross receipts are the general excise taxes. The other items referenced in the Report by Lee W. Erwin, CPA -- base rent, lease rent, late fees, interest charges, CAM, PY CAM, electricity reimbursements, and refuse reimbursements -- are included in the broad definition of "gross receipts" set forth in the Master Lease.

In sum, therefore, based on our reading of the Master Lease, and in particular the "Gross Receipts" provision, the circuit court erred in its interpretation of the items included within gross receipts. <u>See</u> COL 28. We thus vacate the amounts determined by the circuit court that are based on an erroneous

17

calculation of "gross receipts." On remand, the circuit court is instructed to re-calculate the amounts due and owing to the Akona Trust and Francis Pang, as Trustee, in light of the above.

### III. Conclusion

Based on the foregoing, the Third Amended Final Judgment entered by the Circuit Court of the Third Circuit on December 16, 2014, and the circuit court's underlying orders, are affirmed, except as to amounts determined by the circuit court based on an erroneous calculation of "gross receipts." The case is remanded to the circuit court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, June 29, 2018.

On the briefs:

Francis L. Jung, Esq.,
Carol Monahan Jung, Esq.,
for Clark Realty Corporation
and Sefton R. Clark, Personal
Representative of the Estate of
Putman Damon Clark, Deceased.

Kevin W. Herring,
Clara Park,
for Henry F. Akona Trust and
Francis H. Pang, Individually and
in his capacity as Successor Trustee
of the Henry F. Akona Trust.

Chief Judge

Associate Judge

Associate Judge

18